## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re, | ) |
| | ) |
| ALLISION, FREDERICK S. | ) |
| | ) Case No. 20-13919-MER |
| | ) Chapter 7 |
| | ) |
| Debtor. | ) |
| | ) |
| | ) |
| NAMASTE JUDGMENT ENFORCEMENT, | ) |
| LLC, | ) |
| Plaintiff, | ) |
| | ) Adversary Proceeding |
| v. | ) Case No. 20-01256-MER |
| | ) |
| FREDERICK S. ALLISON, | ) |
| Chapter 7 Debtor, | ) |
| | ) |
| Defendant. | ) |

## PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Namaste Judgment Enforcement, LCC ("Namaste" or "Plaintiff"), by and through its counsel Castle Lantz Maricle, LLC, for its Reply in Support of Motion for Summary Judgment against Frederick S. Allison ("Allison", "Debtor" or "Defendant"), states as follows:

## UNDISPUTED FACTS

1.       Allison was employed by New Frontier Bank (the "Bank"), as a lending officer. (Answer to Requests for Admission, ¶1). (Defendant's Answer to Plaintiffs First Set of Written Discovery Requests is Attached as Exhibit 1).

2.       Beeman had a banking relationship with the Bank.

3.       Allison was considered a fiduciary while he worked at the Bank. (Answer to

Requests for Admission, ¶2).

4.      Allison fraudulently executed Beeman's signature on loan documents to obtain a loan in Beeman's name. (Answer to Requests for Admission, ¶3 and Affidavit of Leo Beeman (Attached as Exhibit 2)).

5.      On or about April 27, 2004, Beeman sued Allison for fraud, deceit, and civil conspiracy (the "Beeman Lawsuit").  (Answer to Complaint ¶ 17, Answer to Interrogatories ¶5).

6.      On June 24, 2004, Beeman was granted a judgment in the Beeman Lawsuit in the amount of $285,600.00 (the "Judgment"). (Answer to Interrogatories ¶ 7).

7.      A transcript of Judgment was recorded in Larimer County, Colorado on or about July 1, 2004 and on or about July 27, 2018, Beeman assigned the Judgment to Namaste. (Voluntary Petition for Bankruptcy, Case No. 20:13919-MER, Schedule E/F, Part 2 and Affidavit of Craig Janelli attached as Exhibit 3).

8.      On August 26, 2020, the Judgment was revived by the Larimer County District Court. The amount of the revived Judgment was $912,831.81. (Voluntary Petition for Bankruptcy, Case No. 20:13919-MER, Schedule E/F, Part 2 and Affidavit of Leo Beeman).


## LEGAL STANDARD

Summary judgment is to be granted if the pleadings, depositions, answer to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Bankr. P. 7056 which applies Fed. R. Civ. P. 56. A party seeking summary judgment bears the initial responsibility of informing the court of the basis for his motion and identifying those portions of the pleadings, depositions, interrogatories and admissions on file together with affidavits, if any, that he believes demonstrate the absence of

genuine issue for trial. *Thalos v. Dillon Companies, Inc.* 86 F. Supp. 2d 1079, 1082 (D. Colo. 2000).

The burden is on the moving party to show that no genuine issue of material fact exists. *Celotex Corp v. Catrett,*477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). When examining a motion for summary judgment, a court must examine the factual record and reasonable inferences that may be drawn from it in the light most favorable to the party opposing the motion. *Dillon v. Fireboard Corp.,* 919 F.3d 1488, 1490 (10th Cir. 1990). If the moving party makes a prima facie case, the burden then shifts to the non-moving party to set for the specific facts demonstrated by evidence, "from with a rational trier of fact" could find in its favor. *Whitesel v Sengenberger,* 222 F.3d 861, 866 (10th Cir. 2000). However, "conclusory and self-serving affidavits are not sufficient" to rebut the moving party's prima facie case. *Hall v Bellmon,* 935 F.2d 1106, 1111 (10th Cir. 1991).

## **ARGUMENT**

A.  **Allison's debt to Namaste is not dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).**

Pursuant to 11. U.S.C. § 523(a)(2)(A), a debtor will not be discharged from a debt or money, property, or services to the extent obtained by (A) false pretenses, a false representation, or actual fraud.   A claim will not be dischargeable under this section if the following elements are proven: (1) the debtor made a false representation; (2) the debtor made the representation with the intent to deceive the creditor; (3) the creditor relied on that representation; (4) the creditor's reliance was reasonable; (5) the debtor's representation caused the creditor to sustain a loss." *Fowler Bros. v. Young (In re Young),* 91 F.3d 1367, 1373 (10th Circ. 1996).

Allison admits that he fraudulently executed loan documents in Beeman's name and obtained loans in Beeman's name against Beeman's property. (Answers to Request for Admission

¶ 3 and Allison Affidavit ¶¶ 11 and 13). Allison made a false representation when he fraudulently signed Beeman's name, Allison obtained the loan in Beeman's name and deprived Beeman of his money. Beeman sustained a loss due to Allison's actions.

False representations are "representations knowingly and fraudulently made that give rise to the debt." *In re Lewis,* 271 BR 877, 855 (B.A.P. 10th Cir. 2002). In his answer to interrogatories, Allison admits that he fraudulently signed Beeman's name to loan documents in order to obtain a loan against Beeman's property. (Answer to Request for Admission ¶ 3). In addition, the Judgment is the result of a lawsuit and claims asserted against Allison for fabricating a loan in Beeman's name and forging Beeman's signature on the loan documentation.

In his Response to the Motion for Summary Judgment, Allison argues that because Allison and Beeman were in a joint venture type of relationship and were friends Allison was permitted to obligate Beeman financially on these loans. Specifically, Allison claims that "[h]ad Mr. Allison placed the property in a joint venture title originally when taking title from the bank we would have been able to encumber the property without the necessity of using Mr. Beeman's name." However, title to the Drake Property was in Beeman's name. If indeed Beeman had agreed to take out loans against the Drake Property, the appropriate conduct would have been for Beeman to simply give Allison that authority through a power of attorney. There was never a power of attorney or any other authority provided by Beeman. Instead, Allison unilaterally decided to sign Beeman's name on loan documents and obligate Beeman to repayment of the loans. There is no evidence or documentation that would support Allison's claim that Beeman gave his consent, implied or otherwise to encumber the Drake Property or obligate himself to loans. It is important to note that title to the Drake Property was only in Beeman's name, not in the name of a joint venture or Allison. As such the only person permitted to obtain a loan against the Drake Property

was Beeman. This is regardless of an alleged joint venture relationship that might have existed or friendship between the parties. Under Colorado law, partners in a joint venture owe a fiduciary duty to one another, including duties of loyalty, honesty, and candor, good faith and fair dealing, and lack of self-dealing. *In re S&D Foods, Inc*., 144 B.R. 121, Bkrtcy D Colo. 1992).

Beeman provided $125,000 in cash to Allison to purchase the Drake Property and had no intention of taking out additional loans against the Drake Property (Beeman Affidavit ¶ 4). Allison obtained two separate loans in Beeman's name against the Drake Property. Allison admits that he "used those funds personally." (Allison Affidavit ¶ 14). Using funds for his personal benefit does not further or benefit the joint venture.

   B.       **Allison's debt to Namaste is not dischargeable pursuant to 11 U.S.C. § 523(a)(2) (B).**

Pursuant to 11 U.S.C. § 523(a)(2) (B) "[a] discharge under section 727…does not discharge an individual debtor from any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by (B) use of a statement in writing – that (i) is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor cause to be made or published with the intent to deceive…"

Allison admitted in his Answers to Interrogatories he fraudulently executed Beeman's name on loan documents; thus constituting a material false writing. (Answer to Interrogatories, ¶ 3). In the Response Allison argues that because he and Beeman had a friendly relationship and had known each other for a long time, this alone somehow correlated to Beeman granting approval for Allison to encumber Beeman's property and incur debt solely in Beeman's name by signing Beeman's name on loan documents. Again, this does not constitute the duties of loyalty, honesty, and candor, good faith and fair dealing, and lack of self-dealing as is required in a joint venture

5

type of relationship as explained in *In re S&D Foods, Inc.*

C.    **Allison's debt to Namaste is not dischargeable pursuant to 11 U.S.C. § 523 (a)(4).**

Debtor's actions further constitute larceny and embezzlement, because Colorado law

defines theft as incorporating other crimes such as larceny, embezzlement, and false pretenses.

*See, e.g.*, C.R.S. §§ 18-4-401, 14-4-403. Specifically, C.R.S. § 18-4-403 provides:

> If any law of this state refers to or mentions larceny, stealing, embezzlement (except embezzlement of public moneys), false pretenses, confidence games, or shoplifting, that law shall be interpreted as if the word "theft" were substituted therefor; and in the enactment of sections 18-4-401 to 18-4-403 it is the intent of the general assembly to define one crime of theft and to incorporate therein such crimes, thereby removing distinctions and technicalities which previously existed in the pleading and proof of such crimes.

As set forth under C.R.S. § 18-4-401 "theft" is defined as:

> (1) A person commits theft when he or she knowingly obtains, retains, or exercises control over anything of value of another without authorization or by threat or deception; or receives, loans money by pawn or pledge on, or disposes of anything of value or belonging to another that he or she knows or believes to have been stolen, and:
> (a) Intends to deprive the other person permanently of the use or benefit of the thing of value;
> (b) Knowingly uses, conceals, or abandons the thing of value in such manner as to deprive the other person permanently of its use or benefit;
> (c) Uses, conceals, or abandons the thing of value intending that such use, concealment, or abandonment will deprive the other person permanently of its use or benefit;
> (d) Demands any consideration to which he or she is not legally entitled as a condition of restoring the thing of value to the other person; or
> (e) Knowingly retains the thing of value more than seventy-two hours after the agreed-upon time of return in any lease or hire agreement.

Here, the Debtor acknowledges he forged a document.  In his Response, Allison claims

that he did not intend to deceive or trick Beeman and therefore, his act of signing Beeman's name

to loan documents is not forgery. However, it is clear that the only reason to take out a loan in

another person's name and taking the funds for personal use can only be considered deception and

theft. To further illustrate Allison's deception, when Beeman became suspicious of Allison, Beeman asked to see the Drake Property to determine the progress made in construction as Beeman had never physically seen the Drake Property. Allison brought Beeman to a different property that was for sale and represented to Beeman that it was the completed Drake property. Beeman did his own research and confirmed the property that Allison represented was the Drake Property was not in fact the Drake Property (Affidavit of Leo Beeman, ¶¶ 10, 11, 12, and 13).

This deceit and misrepresentation was done knowingly and with the intent to defraud Beeman.

> D.   **Allison's debt to Namaste is not dischargeable pursuant to 11 U.S.C. § 523 (a)(6).**

11 U.S.C. § 523 (a)(6) excepts from discharge any debt for willful and malicious injury by a debtor to another entity. For a debt to be non-dischargeable under this section, "the debtor must desire to cause the consequences of his act or believe that the consequences are substantially certain to result from it." This language may apply to a broad range of [tortious] conduct causing harm to people and property*." In re Graham,* 455 B.R. 227, Bkrtcy.D.Colo.  2013).

Injury is willful under 11 U.S.C. § 523 (a)(6) if the action was intentional." *Id.* An injury is "malicious" under 11 U.S.C. § 523 (a)(6) if it was "substantially certain to cause the injury." Here, Allison intended to cause injury to Beeman or at the very least, that his actions were substantially certain to result in injury. Allison's admission that he fraudulently executed loan documents in Beeman's name makes clear that the intention was to fraudulently obtain the funds from the loan issued to him in Beeman's name. (Answers to Request for Admission, ¶¶ 3 and 4).

Allison's arguments in the Response are inconsistent. Allison argues that he obtained the loan for the sole purpose of forwarding that business venture. However, in Allison's Affidavit he states that the funds he obtained from the loan he took out in Beeman's name he "used those funds

personally." (Allison Affidavit ¶ 14). The only logical conclusion that can be made from Allison's actions of obtaining a loan in Beeman's name and for his own personal use and benefit misrepresenting the Drake property to Beeman was to trick or deceive Beeman and take his money.

Debtor's actions related to the judgment held by Namaste prevent the debt from being discharged pursuant to  11 U.S.C. § 523 (a)(6).


## **CONCLUSION**

In light of the above, and because there is no genuine issue of material fact regarding the conclusion that Allison's debt to Namaste is not dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) and (B), 11 U.S.C. § 523 (a)(4), and 11 U.S.C. § 523 (a)(6), Plaintiff respectfully requests that the Court grant Plaintiff's Motion for Summary Judgment.


DATED this 28th day of June 2021.

Respectively Submitted,

CASTLE LANTZ MARICLE, LLC

*/s/ Jennifer C. Rogers*
Jennifer C. Rogers, #34682
Robert Lantz, #30825
4100 E. Mississippi Ave.
Suite 410
Denver, CO 80246
P: 720-613-1380
E: jrogers@clmatty.com
*Counsel for Plaintiff*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

In re,                                     )
                                           )
ALLISION, FREDERICK S.                     )
                                           )   Case No. 20-13919-MER
                                           )   Chapter 7
                                           )
                          Debtor.          )
                                           )
_____  )
                                           )
NAMASTE JUDGMENT ENFORCEMENT,              )
LLC,                                       )
                          Plaintiff,       )
                                           )   Adversary Proceeding
v.                                         )   Case No. 20-01256-MER
                                           )
FREDERICK S. ALLISON,                      )
Chapter 7 Debtor,                          )
                                           )
                          Defendant.       )

## CERTIFICATE OF SERVICE

**9013-1 Certificate of Service:**

The undersigned certifies that on June  28, 2021, a true and correct copy of the Reply in Support of Motion for Summary Judgment and Proposed Order was served electronically via CM/ECF on all parties against whom relief is sought and those otherwise entitled to service pursuant to the Fed.R.Bankr.P. and the L.B.R.

*/s/ Dustin Weber*
Dustin Weber, Sr. Paralegal